# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

MARK SYFERT,

                          Plaintiff,

          v.                                  6:15-CV-1149
                                                (LEK/ATB)

CITY OF ROME, and JOHN and
JANE DOE 1 to 9,

                         Defendants.

---

MARK SYFERT, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court a civil rights complaint, filed by pro se plaintiff Mark Syfert, together with an application to proceed in forma pauperis ("IFP"). (Dkt. Nos. 1, 2). For the following reasons, this court will grant plaintiff's IFP application, but will recommend dismissal of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## I. __IFP Application__

A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2). This court agrees, and finds that plaintiff is financially eligible for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss

the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

## II.  **Complaint**

The complaint in this action describes a series of chronological events which the court has attempted to interpret as liberally[1] as possible in order to determine what claims the plaintiff may be trying to present.  Plaintiff alleges that in 2006, he met Mike Mondrick, who was the "future City of Rome Plumbing Inspector." (Complaint ("Compl.") ¶ 4(1)) (Dkt. No. 1).  Plaintiff claims that Mike Mondrick was on plaintiff's land, cutting plaintiff's logs and splitting them for firewood.  Mr. Mondrick was also using stone from plaintiff's driveway for "mud control." (*Id.*)  When plaintiff informed Mr. Mondrick that the land was his, Mr. Mondrick claimed that it belonged to Nick Mondrick.  Plaintiff claims that he purchased the land at an Oneida County tax sale, and that Nick Mondrick lost the property due to unpaid taxes. (*Id.*)  Plaintiff claims that Mike Mondrick told plaintiff that he was wrong, and that if he did not leave, "he would put [plaintiff] out of business."  Plaintiff says that he left his land for two years, but Mike Mondrick "still put [plaintiff] out of business." (*Id.*)  This incident is apparently where the animosity between Mr. Mondrick and plaintiff began.

Plaintiff claims that he suffered "[o]ngoing and never ending Retaliation, Revenge, [and] Harassment" from the City of Rome's Code Department, beginning when Mike Mondrick was appointed as the City of Rome Plumbing Inspector, with no advertising by the City for the job.  Plaintiff seems to claim that Mike Mondrick violated plaintiff's freedom to conduct a "legal business" of city-licensed master

---

[1] The court must interpret pro se complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

plumber "without fear of Retaliation, Revenge, Harassment, or Loss of said business . . . ." (Compl. ¶ 4(2)).

Plaintiff states that on March 20, 2008, Mike Mondrick issued plaintiff his "Master Plumbing License, knowing it already expired on December 31, 2007." (Compl. ¶ 4(4)). Plaintiff states that he never looked at the date until a customer noticed it during the time plaintiff was bidding on a plumbing job. (*Id.*) When the customer noticed the expired license, he walked out, and plaintiff was unable to bid on the job. Plaintiff alleges that he complained and was issued a new license, dated September 11, 2008. Plaintiff also claims that "in the meantime," he received a call from the Rome Department of Public Works ("DPW"), telling plaintiff that DPW was going to send a crew to mow plaintiff's lawn and charge the service to his property taxes. Plaintiff claims there was nothing wrong with his lawn, and this was just harassment for complaining about his plumbers' license. (*Id.*)

Plaintiff claims that on July 16, 2009, he received a certified letter from Mark Domenico, stating that plaintiff had a three family, not a two family residence because plaintiff had three electrical meters.[2] (Compl. ¶ 4(5)). Plaintiff explains why he was allowed to have three electrical meters and states that the meters were there since 1984 when he purchased the home and installed them. Plaintiff told Mark Domenico to listen to the "City Zone Broad [sic] minutes of March 7, 1984," when he addressed the zoning board regarding this issue. Plaintiff claims that Mark Domenico[3] then erased

---

[2] Plaintiff states that he moved into the residence in 1995. (Compl. ¶ 4(5)).

[3] According to the City of Rome website, Mark Domenico is the Chief Code Enforcement Officer for the City of Rome. www.romenewyork,com/code-enforcement/.

the "minutes," and destroyed evidence which could prove plaintiff's innocence "in the future."[4] (*Id.*)

Plaintiff claims that in October of 2009, Mike Mondrick and Patrick Hetherington "illegally" issued "two occupancies" in violation City Codes. (Compl. ¶ 4(6)). Plaintiff alleges that on October 6, 2009, Mike Mondrick ordered plaintiff to perform a "water test to the top of [a] roof vent on a pre-existing two-story house," after the repair of a pipe in the basement. (Compl. ¶ 4(7)). Plaintiff claims that the "other plumber" did not have to do the water test. In the same paragraph, plaintiff states that, in February of 2012, Mike Mondrick also issued two permits for the same job, "using receipt numbers that do not exist on said permit." (*Id.*) Mike Mondrick issued a check without an invoice on April 12, 2012, but plaintiff returned the check to the city because he had not paid for the permit. (*Id.*)

On March 9, 2011, plaintiff alleges that Mike Mondrick "illegally" tried to "remove [plaintiff's] Master License" and make him take the test again because he did not pay the fee. Plaintiff claims that he paid the fee in January of 2011, but his name was taken off the list of Master Plumbers before the letter was sent on January 31, 2011. (Compl. ¶ 4(8)). Plaintiff claims that his name was thrown in the trash, and did not appear on the Master Plumbers list, "a service the City must provide because

---

[4] Earlier in the complaint, plaintiff states that Mark Domenico erased the March 7, 1984 Rome City Zoning Board's meeting minutes, in the "middle" of plaintiff's presentation to the zoning board about his "pre-existing" third-floor in-law apartment. (Compl. ¶ 4(3)). Plaintiff claims that by erasing these minutes, Mark Domenico destroyed "evidence" that would later prove plaintiff's "total innocence" of a Class A misdemeanor with which he was charged by the Rome City Code Department. (*Id.*)

[plaintiff] paid the fee." Plaintiff claims this action "forced [him] out of business." (*Id.*)

Plaintiff alleges that on January 12, 2012, Mike Mondrick responded to plaintiff's requests regarding the status of two permits because plaintiff never made the appointments for "final inspection." (Compl. ¶ 4(9)). Plaintiff states that he found out that "both passed inspection" even though he did not do any "finish plumbing work." On June 6, 2012, Patrick Hetherington issued a "stop work order" when plaintiff was attempting to install an air conditioning unit on his roof without a building permit, even though, according to plaintiff, no permit was required for the work. (*Id.*) Plaintiff then states that on January 4, 2013, he was hit by a car and could not work. (Compl. ¶ 4(11)). Plaintiff states that he completed the Master Plumbers Application for 2013 and 2014 indicating that he was "out of business" and "not working." (*Id.*)

Most of the remaining paragraphs of the complaint deal with a criminal charge that was apparently filed against plaintiff. (Compl. ¶¶ 4(12)-4(15), 4(17), 4(19)). As stated above, it appears that plaintiff was charged with making false statements, a Class A Misdemeanor. (Compl. ¶ 4(3)). On October 20, 2013, plaintiff states that he received a "Noncertified" letter, summoning him to court and warning him that failure to appear would result in a warrant being issued. (Compl. ¶ 4(12)). Plaintiff states that he was appointed an attorney, pled innocent to the charge(s), and was scheduled to go to trial on December 17, 2013. (Compl. ¶ 4(13)). Plaintiff claims that he cancelled his hip replacement surgery because of the trial,[5] but on December 17, 2013, the trial was

---

[5] Plaintiff also states that his tenant stopped paying the rent because of the "alleged code violations." (Compl. ¶ 4(13)). It is unclear whether this statement applies to the criminal "false statement" charges or whether plaintiff is just adding a new statement to the paragraph.

adjourned without date. (Compl. ¶ 4(14)).

Plaintiff states that he had his hip replacement surgery on February 18, 2014 and applied for Supplemental Security Income ("SSI") disability benefits. (Compl. ¶ 4(15)). On April 18, 2014, City Court was cancelled because it was Good Friday, and plaintiff's appearance was rescheduled for June 30, 2014. (*Id.*) In the meantime, on April 29, 2014, plaintiff alleges that Donna Piekarski from the City Purchasing Department called plaintiff to bid on upcoming jobs with the City of Rome. (Compl. ¶ 4(16)). Plaintiff told Ms. Piekarski that he was disabled for more than a year, but plaintiff found out that Jeanny Grande, the City Code Enforcement Secretary had put plaintiff's name back on the Master Plumber's list. Plaintiff seems to claim that this action was an attempt to "Stop My S.S.I."[6] (*Id.*)

Plaintiff alleges that at the June 30, 2014 appearance, there was no trial and no date set for trial on the criminal charges. (Compl. ¶ 4(17)). On September 29, 2014, plaintiff filed a "Notice of Claim" against the City of Rome. (Compl. ¶ 4(18)). Plaintiff states that on May 25, 2015, he began calling the City Court's office to determine when his trial date would be set and complain that his court-appointed attorney had not returned plaintiff's calls for seven months. (Compl. ¶ 4(19)). The Court Clerk told plaintiff that a trial date would be set, and plaintiff would be notified. The Clerk also told plaintiff that his attorney would be told to call plaintiff back. Plaintiff states that "weeks later," he was told that his paperwork could not be located, and that he must speak with the Corporation Counsel. Plaintiff states that he was also told that he had to

---

[6] Plaintiff's theory may be that if his name was still on the Master Plumbers' List for the City, then someone would think he was still working, and therefore, not disabled.

get a new court-appointed attorney before a trial date could be set. (*Id.*) On July 23, 2015, "he" ordered plaintiff to appear in court on August 10, 2015. Plaintiff states "Enough is Enough I DID NOT SHOW." The court assumes that a warrant was issued for plaintiff's arrest because in the last three phrases of the paragraph, plaintiff questions whether the Court Clerk was authorized to "order someone[']s arrest?????." (*Id.*)

The complaint contains four causes of action. (Compl. Causes of Action ("COA") 1-4). The first cause of action states that plaintiff's freedom to conduct a legal business of City Licensed Master Plumber without fear of retaliation, revenge, harassment, or loss of business was violated. Within this cause of action he lists alleged conduct by Mike Mondrick – issuing a Master Plumbing License, knowing that it was already expired; illegally issuing two occupancies; illegally attempting to remove plaintiff's license and make him take a re-test; taking plaintiff's name off the Master Plumbers' List, resulting in a loss of free advertising; and throwing plaintiff's name in the trash can.

The second cause of action states that plaintiff has suffered ongoing and never-ending work-related retaliation, revenge, and harassment from the City Codes Department, beginning when Mike Mondrick was appointed to the Plumbing Inspector position with no advertising or interviewing other qualified persons.[7] Plaintiff's third and fourth causes of action deal with his criminal charges. Plaintiff's third cause of

---

[7] Plaintiff states that no other individuals were interviewed for the job, which stopped him from "advancement to the City Plumbing Board or being interviewed for the job of Plumbing Inspector despite having double Mike Mondrick's qualifications." (COA 2). This is the first time that plaintiff mentions that he would have liked to apply for Mike Mondrick's job.

action states that his speedy and fair trial rights have been violated. (COA– 3). His right to be innocent until proven guilty has been violated, and he complains about the City Court Judge failing to set a trial date as well as being denied "discloser."[8] Plaintiff's fourth cause of action states that Mark Domenico destroyed and tampered with evidence by erasing the City Record that would have proven plaintiff's "total innocence of the Class A misdemeanor. (COA– 4).

Plaintiff seeks millions of dollars in damages, including $12,000.00 in lost rent. Plaintiff also asks that the court prosecute[9] the City of Rome employees for illegal activities and "tremenation [sic]"[10] of employment from the City of Rome. (Compl. ¶ 6).

The court notes that although plaintiff identifies and discusses several individuals at length, he has not named any of these individuals as defendants. Plaintiff has named only the City of Rome and nine John or Jane Does. Because of the liberality with which pro se complaints are treated, the court will proceed to analyze the complaint as if plaintiff had named the individuals and the City. The court will also discuss the unnamed defendants below.

## III. Criminal Charges

### A. Legal Standards

To the extent that plaintiff's criminal case is still pending in state court, it is well-

---

[8] Plaintiff may be referring to "disclosure" or "discovery."

[9] The complaint actually asks for "Prosecting City of Rome's Employees," but this court assumes that plaintiff wishes this court to "prosecute" these individuals.

[10] The court has read this word liberally to mean "termination" of employment. However, it does not appear that plaintiff ever worked for the City of Rome. He was on a list of plumbers who were licensed by the City.

settled that federal courts may not interfere with pending state criminal prosecutions, absent some extraordinary circumstance, such as bad faith prosecution, unconstitutional laws, or the lack of adequate process in state court for protecting the plaintiff's rights. *Younger v. Harris*, 401 U.S. 37, 43-54 (1971). This abstention is appropriate when there is a pending state proceeding, implicating an important state interest, and the state proceeding will afford the plaintiff an adequate opportunity for review of his federal constitutional claims. *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003).

Even if plaintiff had already been convicted of the charges, a civil lawsuit may not be used to collaterally attack a criminal conviction. *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a section 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction unless the conviction or sentence had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal habeas court. *Id.* at 486-87.

## B. Application

Plaintiff has included various claims relating to alleged criminal charges that have apparently been filed against him, but for which he has not yet been tried. (Compl. ¶¶ 4(12)-4(14), 4(17), 4(19) and COA ## 3, 4). Plaintiff alleges that he has been denied a speedy and fair trial, his right to be innocent until proven guilty has been violated, and Mark Domenico has erased a City record from 1984 that would prove plaintiff's innocence of the charges. Clearly, if the court were to find in plaintiff's favor on these

allegations, it would affect the pending criminal action against him. Under *Younger, supra*, this court may not do so. The state court provides opportunities for plaintiff to challenge his charges on speedy trial grounds or any other grounds upon which he might seek dismissal. It appears that plaintiff has a court-appointed lawyer, or will obtain another court-appointed attorney in the future. He should consult the attorney to determine what challenges he may bring. The state has an interest in handling its own criminal proceedings without interference, and plaintiff certainly has an adequate opportunity to challenge the charges in state court. *See Miller v. Hourihane*, No. 08-CV-2646, 2008 WL 2795468, *1 (E.D.N.Y. July 18, 2008).

Also as stated above, even if plaintiff had been convicted of the charges, he would not be able to bring a civil action for damages relating to those charges if a decision in his favor would affect the validity of the conviction.[11] Based on plaintiff's claims, even if he had been convicted, and he challenged the conviction on speedy trial grounds or upon evidence tampering, a decision in his favor would necessarily affect the validity of any conviction. Plaintiff would have to successfully challenge the conviction's validity first in New York State courts or, if necessary, in a federal habeas corpus proceeding before he could bring a civil rights action relating to that conviction. Thus, to the extent that plaintiff challenges any aspect of his pending criminal proceeding, the complaint should be dismissed.

---

[11] If plaintiff obtains dismissal of the charges prior to trial and conviction, then plaintiff may bring an action raising any constitutional violations that may have preceded the charges.

## IV.   Statute of Limitations

### A.   Legal Standards

The statute of limitations for section 1983 actions is the "general" statute for personal injury actions in the state in which the cause of action arose. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989).  In New York, it is well settled that the applicable statute of limitations is three years under N.Y. C.P.L.R. § 214(5). *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).  The federal court also borrows the tolling provisions for the state statute of limitations. *See Board of Regents v. Tomanio*, 446 U.S. 478, 483 (1980). *See also Woods v. Candela*, 13 F.3d 574, 576 (2d Cir.), *vacated on other grounds*, 513 U.S. 810 (1994).  The statute of limitations begins to run on the date that plaintiff's claim accrued, which is the date that plaintiff has a complete and present cause of action and can file suit and obtain relief. *Wallace v. Kato*, 549 U.S. 384, 388 (2007).

Even if the statute of limitations has run, "equitable tolling" may be available. Equitable tolling is applied in "rare and exceptional cases" where "extraordinary circumstances" prevented the plaintiff from filing his claims within the statute of limitations. *See Abbas v. Dixon*, 480 F.3d 560, 564 (2d Cir. 2007).  Plaintiff bears the burden of establishing the applicability of equitable tolling. *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000).

### B.   Application

Plaintiff filed this action on September 24, 2015.  Three years prior to the filing date is September 24, 2012.  Any causes of action in plaintiff's complaint that accrued

prior to September 24, 2012 are likely barred by the statute of limitations. The court assumes that plaintiff's first paragraph which recites events from August of 2006[12] is merely an explanation of how the alleged animosity between plaintiff and Mike Mondrick began.

However, most of the incidents listed on plaintiff's chronology occurred prior to September 24, 2012. The first two causes of action mention only incidents which occurred prior to 2012. Plaintiff claims that Mr. Mondrick issued plaintiff an "expired" license in 2008; the notice from the Code Department about plaintiff's grass was also in 2008; the letter from Mark Domenico regarding plaintiff's "three family" residence was in July of 2009; the alleged "illegal" occupancy was issued by Mr. Mondrick and Mr. Hetherington in October of 2009; Mr. Mondrick ordering plaintiff to perform a "water test" when another plumber was not required to do so was in October of 2009; Mr. Mondrick allegedly attempting to "remove" plaintiff's license, and the City of Rome charging plaintiff for its renewal for failure to pay the fee occurred in March of 2011; the allegation that plaintiff's name was thrown in the trash occurred in March of 2011; and the "stop work" order for plaintiff's air conditioning installation occurred on June 6, 2012. All of the conduct occurring prior to September 24, 2012 is barred by the statute of limitations.

Plaintiff's allegations also do not amount to a "continuing violation." The continuing violation doctrine, where applicable, is an exception to the normal "knew-or

---

[12] According to plaintiff, Mr. Mondrick was not appointed to the Plumbing Inspector's position until after the 2006 incident. In the discussion of the 2006 incident, plaintiff refers to Mr. Mondrick as the "future" City of Rome Plumbing Inspector. (Compl. ¶ 4(1)).

-should-have-known" accrual date if there is evidence of an ongoing discriminatory policy or practice. *Gonzalez v. Hasty*, No. 13-2844, 2015 WL 5155150, at *5 (2d Cir. Sept. 3, 2015) (quoting *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999)); *Fierro v. New York City Dep't of Educ.*, 994 F. Supp. 2d 581, 586 (S.D.N.Y. 2014) (citing *Corona Realty Holding, LLC v. Town of N. Hempstead*, 382 F. App'x 70, 72 (2d Cir. 2010) (citation omitted)). The continuing violation doctrine does not apply to "discrete acts," even where those discrete acts are a part of a "serial violation," but only to claims that "by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Gonzalez*, *supra* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002)). When the doctrine applies, the limitations period begins to run when the defendant has engaged in "enough activity to make out an actionable . . . claim," as long as the plaintiff has alleged some non-time-barred acts which contributed to the alleged violation. *Id.* (quoting *Morgan*, 536 U.S. at 117; *Harris*, 186 F.3d at 250) (internal quotations omitted)).

The court notes that the "continuing violation" doctrine typically arises in the context of employment discrimination law under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. *Id.* In *Gonzalez*, he Second Circuit very recently discussed the applicability of the doctrine in the context of non-employment civil rights cases such as *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and 42 U.S.C. § 1983. *Id.* at 2015 WL 5155150, at *4-7. Although the court found that the doctrine was applicable to non-employment-related civil rights cases, the court carefully analyzed the claims and applied the

14

doctrine only to claims that were not based on discrete acts and claims that required a threshold amount of abuse prior to accrual. *Id.* The court declined to apply the continuing violation doctrine to the plaintiff's First Amendment retaliation claims, but did apply the doctrine to the inmate's Eighth Amendment claim of conditions of confinement. *Id.*

In this case, most of the allegations occurred prior to September 24, 2012, and it is arguable that the conduct that occurred in 2014[13] was not even related to Mr. Mondrick. Even assuming that plaintiff was being targeted for mistreatment, each act is a discrete event, including facts resulting in plaintiff's criminal charges. Most of the alleged conduct occurred many months, if not years, apart. The fact that plaintiff had to perform a "water test" in 2009, while another plumber did not, or that there was an issue regarding the date on plaintiff's license in 2008, which was then reissued with the appropriate date, and even telling plaintiff that he would have to re-take the plumbers' test if his registration fee was not paid[14] in 2011 are all discrete acts, which if actionable at all, would have been actionable at the time they occurred.[15]

Plaintiff claims that someone threw his name in the trash can and took his name

---

[13] The conduct alleged in 2014 involved Ms. Piekarski calling plaintiff to bid on an upcoming job, after his disability began. (Compl. ¶ 4(16)). Earlier, plaintiff claimed that he was improperly removed from the list, while in 2014, he claims that he was improperly placed back on the list.

[14] Plaintiff does not allege that he had to re-take the test.

[15] In fact, one of plaintiff's causes of action mentions the fact that Mr. Mondrick was hired with no advertising for the job, which prevented plaintiff from applying even though he had twice the qualifications as Mr. Mondrick. While plaintiff does not allege that he ever attempted to apply for the job, and this allegation does not indicate any retaliation or harassment against plaintiff, it certainly is a discreet act. If actionable at all, the conduct would have been actionable at the time that Mr. Mondrick was appointed    some time after 2006 and before the end of 2007.

off the Master Plumbers' List in 2011, which "forced" plaintiff out of business. Even assuming this were true, plaintiff would have known about any potential claim at the time that this alleged conduct occurred. In addition, plaintiff alleges that he was working in 2012, and the reason that he stopped working in 2013 was because he was hit by a car, not because of any conduct by Mr. Mondrick or any other City employee. Plaintiff seems to have issues with Mr. Mondrick and other employees of the City of Rome, but there are no compelling circumstances present to warrant applying the continuing violation doctrine.

In addition, there is no indication that this is one of those extraordinary cases in which equitable tolling should apply. Plaintiff has suspected for a long time that Mr. Mondrick does not like him, and there is no indication that plaintiff was prevented from filing a law suit. Thus, at this point, the court finds that equitable tolling does not apply. However, one of plaintiff's allegations did occur within the statute of limitations, and the court will discuss it below. (Compl. ¶ 4(16)).

V.    **Municipal Liability**

A.    **Legal Standards**

A municipality may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. *LaVertu v. Town of Huntington*, No. 13-CV-4378, 2014 WL 2475566, at *3 (E.D.N.Y. Apr. 4, 2014) (citing inter alia *Los Angeles County, Cal. v. Humphries*, __ U.S. __, 131 S. Ct.

447, 452 (2010)), (Rep.-Rec.*), adopted in relevant part*, 2014 WL 2506217 (E.D.N.Y. June 2, 2014).  Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation.  *Id*.; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979).  Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." *Connick v. Thompson*, __ U.S. __, 131 S. Ct. 1350, 1359 (2011).  Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly.  Finally, municipal liability can, under certain circumstances, be based upon a failure to properly train the municipality's employees. *See City of Canton v. Harris*, 489 U.S. 378, 387-90 (1989).

## B.    Application

The only named defendant in this action, other than nine John or Jane Does, is the City of Rome.  One of plaintiff's other allegations did occur within the statute of limitations, and thus the court will address it herein.  Plaintiff alleges that Donna Piekarski - (also not named as a defendant) - called plaintiff to have him bid for a job in April of 2014, but plaintiff told her that he was disabled and could not work. (*Id.*)  Plaintiff seems to claim that a City Code Enforcement secretary - (also not named as a defendant) - put plaintiff's name back on the Master Plumbers' List so that he would

appear to be working and his SSI benefits would be terminated.

Plaintiff has not stated how either one of these individuals would have been aware of plaintiff's situation or would have been aware of any animosity between Mr. Mondrick and the plaintiff. While Mr. Mondrick, as the Plumbing Inspector, may be found to be a policymaker,[16] neither Ms. Piekarski, nor the Code Enforcement secretary would be considered policy makers for purposes of municipal liability. In any event, plaintiff does not allege that his SSI was terminated over this "incident," or due to any other conduct, by City of Rome employees.[17] Thus, the only alleged conduct that occurred within the statute of limitations does not relate to any policy or policy maker of the City of Rome and may be dismissed.[18]

---

[16] The court makes no such finding herein, however, an official may be considered a policy maker if he or she is responsible under state law in the particular area of the municipality's business and need not be a policy maker for all purposes. *Mangino v. Incorporated Village of Patchogue*, 739 F. Supp. 2d 205, 261 (E.D.N.Y. 2010) (citations omitted).

[17] In any event, plaintiff's name on a list of Master Plumbers does not show that he was "working." It is unlikely that, without more, his name on this list would result in a termination of his disability benefits. Plaintiff makes no such allegation. His claim is pure speculation.

[18] The court also notes that plaintiff does not state any First Amendment retaliation claim. In order to state a First Amendment retaliation claim, plaintiff must show that the speech or conduct at issue was constitutionally protected, the defendant took adverse action against the plaintiff, and that there was a causal connection between the adverse action and the protected speech or conduct. *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003). In this case, plaintiff is claiming that defendant Mondrick took adverse actions against him because of a disagreement over property that occurred in 2006, approximately a year before Mr. Mondrick was ever appointed as the plumbing inspector. Thus, the alleged retaliation is not for the exercise of a constitutional right. It is allegedly due to animosity between Mr. Mondrick and plaintiff. Personal animosity does not rise to the level of retaliatory animus. *Murphy v. City of Rochester*, 986 F. Supp. 2d 257, 275-76 (W.D.N.Y. 2013). The only time that plaintiff actually vaguely alleges retaliation is when he states that the DPW was sent to mow his lawn "in retaliation" for complaining about his improperly issued license. (Compl. ¶ 4(4)). There are cases which have held that plaintiffs stated a claim when then alleged harm in the form of municipal defendants misapplication of zoning codes in retaliation for the exercise of free speech rights. *See LaVertu v. Town of Huntington*, No. 13-CV4378, 2014 WL 2475566, at *6 (E.D.N.Y. Aug. 4, 2014) (citing *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 222 (N.D.N.Y. 2012) (citing *Gagliardi v.*

## VI. John or Jane Doe Defendants

It is unclear why plaintiff named nine John or Jane Doe defendants. (Compl. ¶ 3(b)). There are absolutely no allegations in the complaint against unknown defendants. In the complaint plaintiff has identified by name, each individual who he alleges took some allegedly unconstitutional action against him on behalf of the City of Rome. Because plaintiff has not made any allegations against unknown defendants, and the court is recommending dismissal of the entire complaint, these individuals must also be dismissed from the action.

## VII. Opportunity to Amend

### A. Legal Standards

Generally, when the court dismisses a pro se complaint sua sponte, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B. Application

Plaintiff will not be able to amend his third and fourth causes of action to bring an action against the City regarding his pending criminal action. Thus, plaintiff's third

---

*Village of Pawling*, 18 F.3d 188 (2d Cir. 1994) (Rep't-Rec.), *adopted in part*, 2014 WL 2506217 (E.D.N.Y. June 2, 2014). Plaintiff in this case does not make these allegations. Plaintiff has not alleged that the individuals were motivated in any way by any protected activity by plaintiff.

and fourth causes of action must be dismissed without leave to amend.[19]  Plaintiff's first and second causes of action are both based upon actions that occurred prior to September 24, 2012, and are barred by the statute of limitations.  It also appears very unlikely that plaintiff can state a federal constitutional claim based upon the allegations that he has made in his complaint.  However, the court will recommend dismissal without prejudice and with leave to file a proposed amended complaint that addresses the issue of why the statute of limitations should be equitably tolled and that clarifies any alleged First Amendment retaliation claims.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's application to proceed IFP (Dkt. No. 2) is **GRANTED**, and it is

**RECOMMENDED**, that this action be **DISMISSED WITHOUT PREJUDICE, BUT WITHOUT LEAVE TO AMEND AT THIS TIME AS TO PLAINTIFF'S THIRD AND FOURTH CAUSES OF ACTION** as stated herein, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, and it is

**RECOMMENDED**, that this action be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND AS TO PLAINTIFF'S FIRST AND SECOND CAUSES OF ACTION** as stated herein, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, and it is

**RECOMMENDED**, that if the District Court adopts this recommendation,

---

[19] If plaintiff's criminal charges should be dismissed prior to trial, or if he is convicted, if his conviction is reversed, then plaintiff may, if appropriate, bring a new federal civil action regarding the charges.

plaintiff be given **FORTY FIVE (45) DAYS** from the date of the order approving this Order and Report-Recommendation within which to file a proposed amended complaint as discussed above, and it is

**RECOMMENDED**, that upon plaintiff's filing of a proposed amended complaint, or upon the passage of the time in which to do so if no proposed amended complaint is filed and no extension of the time is requested, the Clerk return the complaint to me for further review.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: October 5, 2015

Hon. Andrew T. Baxter
U.S. Magistrate Judge